
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **WILLIAM GARY STAPLETON** | § | Case No. 14-42478 |
| xxx-xx-1161 | § | |
| 1161 Stacy Rd., Fairview, TX  75069 | § | |
| | § | |
| Debtor | § | Chapter 7 |
| BENCHMARK BANK | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 15-4050 |
| | § | |
| WILLIAM GARY STAPLETON | § | |
| | § | |
| Defendant | § | |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the portion of the complaint filed by the Plaintiff, Benchmark Bank, seeking to deny the entry of a Chapter 7 discharge in favor of the Debtor-Defendant, William Gary Stapleton, pursuant to 11 U.S.C §§ 727(a)(2)(B) and (a)(4)(A), the Court issues the following findings of fact and conclusions of law.  This memorandum disposes of all issues pending before the Court.

## FINDINGS OF FACT

1. On October 24, 2014, the Plaintiff, Benchmark Bank (the "Plaintiff"), became a

---

[1]  These findings of fact and conclusions of law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

judgment creditor of the Debtor-Defendant, William Gary Stapleton ("Defendant" or "Stapleton") in the sum of $258,723.06 arising from the entry of a final judgment in its favor in litigation conducted before the United States District Court for the Eastern District of Texas, Sherman Division, in civil action no. 4:13-cv-00247 and styled *Benchmark Bank v. CAMTAY, Official No. 1189482, in rem, and William G. Stapleton, in personam*.

2. One month later, on November 26, 2014, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against Stapleton in this Court by Starfish Investments, L.P. under case number 14-42478.

3. Stapleton filed an answer to the involuntary petition on December 22, 2014.

4. Facing an adjudication hearing on the involuntary petition to place him into bankruptcy, and though he was employed at the time by Texas Food Brands, LLC, Stapleton was seeking additional sources of income when he sought help from a friend that he had known since 2010, Thomas DeWitt ("DeWitt").

5. At that time, DeWitt owned and operated at least two businesses from the same Dallas, Texas location: (1) a fitness equipment operation called CoreXtreme; and (2) a car dealership called Bolt Motorsports which sold high performance automobiles from manufacturers such as Lamborghini, Porsche, and Ferrari.

6. Stapleton and DeWitt discussed the possibility of Stapleton's employment with the CoreXtreme fitness operation.

7. Knowing that Stapleton had a network of contacts in the Collin County area, DeWitt agreed that in the interim Stapleton could earn a sales commission if he were able to procure a buyer for a 2008 Lamborghini Gallardo Superlegerra (the "Lamborghini") which Bolt Motorsports had previously purchased but for which a retail purchaser had not been procured.

8. This was not an unusual step. DeWitt utilized various persons during this time period to market the Lamborghini for retail sale.

9. On January 8, 2015, Stapleton posted three photos of the Lamborghini on his personal Facebook page, along with a brief sales solicitation.[2] DeWitt was aware

---

[2] Ex. 6. The Facebook post stated "Ready to reward yourself for all your hard work and long hours? I know one of y'all would love to get your hands on this 1200 Hp beast!! If you or anyone you know would like to give it a new home hit me up on messenger."

        of the Facebook post.

10.    DeWitt later tendered to Stapleton detailed textual descriptions and photographs of the Lamborghini.

11.    On January 12, 2015, the availability of the Lamborghini was posted on www.toysforbigboys.com ("TFBB"), a website dedicated to the sale of high-end vehicles and boats, at a listed price of $190,000.00.[3]

12.    TFBB was not one of the websites Bolt Motorsports routinely utilized to list current vehicles for sale.

13.    Stapleton testified without contradiction that, though he was responsible for the TFBB posting, he did not personally post the vehicle on the website. He had instead forwarded DeWitt's textual material and photographs to an acquaintance for such website posting.

14.    The free TFBB posting, however, listed Stapleton as the owner of the vehicle, provided his personal email address, and listed the telephone number for CoreXtreme as the contact number.[4]

15.    The photographs and textual descriptions of the Lamborghini that DeWitt had previously provided were posted on TFBB.[5]

16.    DeWitt testified without contradiction that, notwithstanding the manner in which the contact information was listed in the TFBB posting, Bolt Motorsports owned the posted 2008 Lamborghini.

17.    In fact, the posted photographs of the Lamborghini illustrated unique engine modifications explained by DeWitt and he testified without contradiction that the photographs had been taken in his own neighborhood.

18.    No sale was triggered by the TFBB posting.

19.    On January 14, 2015, Stapleton consented to the entry of an order for relief under

---

[3] Ex. 7. Only the first three pages of Ex. 7 were admitted into evidence.

[4] *Id.*

[5] *See supra* note 3.

Chapter 7 of the Bankruptcy Code through an agreed order.[6]

20. Michelle Chow was appointed as the Chapter 7 Trustee (the "Trustee").

21. Stapleton began employment for DeWitt's company, CoreXtreme, on or around February 1, 2015.

22. In early February 2015, Bolt Motorsports sold and shipped the Lamborghini to Chicago Motor Cars in West Chicago, Illinois.

23. Stapleton had no involvement in the Lamborghini sale and received no commission for it.

24. On February 11, 2015, Stapleton filed his schedules and statements in the Chapter 7 case.[7]

25. Stapleton represented under oath, in response to question #25 of his Schedule B, that the only vehicles he owned were a 2013 Ford F-250 truck and a (wrecked) 2010 Harley Davidson Road Glide motorcycle.[8]

26. The transfers identified by Stapleton under oath in response to question #10 of his Statement of Financial Affairs did not list any transfer of any automobile.[9]

27. Stapleton testified under oath at two § 341 meetings of creditors conducted by the Trustee.

28. While confirming at each § 341 meeting that his statements and schedules were correct to the best of his knowledge, no questions regarding Stapleton's ownership of any exotic cars were propounded at either meeting.

29. On June 11, 2015, the Plaintiff filed its complaint against Stapleton, seeking a denial of the Debtor's discharge under 11 U.S.C. §§ 727(a)(2)(B) and 727(a)(4), as well as a determination of the dischargeability of a particular debt under 11 U.S.C.

---

[6] *See* dkt #10 in Case No. 14-60808. Stapleton's spouse was not joined in the bankruptcy case.

[7] *See* dkt #24 in Case No. 14-60808. Stapleton would subsequently add one creditor in an amended Schedule F filed on June 4, 2015. *See* dkt #42 in Case No. 14-60808.

[8] *Id*. at 7.

[9] *Id*. at 36.

§ 523(a)(2)(B).[10]

30. Though Stapleton was not a particularly credible witness, the circumstantial evidence arising from his involvement with the sale of the 2008 Lamborghini automobile is woefully insufficient to demonstrate by a preponderance of the evidence that he had any ownership interest in any Lamborghini automobile.

31. The testimony offered by Thomas DeWitt regarding the ownership and sale of the 2008 Lamborghini by Bolt Motorsports was credible and uncontradicted.

32. It is more likely that Stapleton's limited involvement with the 2008 Lamborghini owned by Bolt Motorsports occurred in an attempt by DeWitt to help his friend through his financial problems rather than any attempt by Stapleton to conceal his ownership interest in such an automobile.

33. There is no credible evidence to support the Plaintiff's last-minute supposition that the Debtor was involved in the ownership or sale of a different Lamborghini automobile from the one owned by Bolt Motorsports.

34. The evidence tendered to prove that Stapleton possessed an ownership interest in the 2008 Lamborghini rises to no more than a mere surmise or suspicion.

35. The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Debtor owned a Lamborghini automobile.

36. The Plaintiff has failed to demonstrate by a preponderance of the evidence that a Lamborghini automobile constituted a part of the property of the Debtor's bankruptcy estate.

37. The Plaintiff has failed to demonstrate by a preponderance of the evidence that Stapleton concealed property of his bankruptcy estate in the post-petition period.

38. The Plaintiff has failed to demonstrate by a preponderance of the evidence that Stapleton transferred property of his bankruptcy estate in the post-petition period.

---

[10] Due to the pendency of another § 727 complaint brought against the Debtor by another creditor before the Hon. Brenda T. Rhoades, the Court entered its *Amended Sua Sponte Order Severing Counts of Complaint into Separate Adversary Proceedings and Abating Adversary Regarding Count II of Complaint* on August 24, 2016 [dkt #24] which abated the Plaintiff's § 523(a)(2)(B) complaint pending the determination of the other § 727 action.

39. The Plaintiff has failed to demonstrate by a preponderance of the evidence, including any circumstantial evidence, that Stapleton took any action regarding the property of his bankruptcy estate with an intent to hinder, delay or defraud a creditor or an officer of the bankruptcy estate.

40. The Plaintiff has failed to demonstrate by a preponderance of the evidence that Stapleton knowingly made a false statement under oath in his required schedules and statements regarding an ownership interest in a Lamborghini automobile.

41. The Plaintiff has failed to demonstrate by a preponderance of the evidence, including any circumstantial evidence, that Stapleton knowingly made a false statement under oath in his required schedules and statements with a fraudulent intent regarding an ownership interest in a Lamborghini automobile.

42. The Plaintiff has failed to demonstrate by a preponderance of the evidence that Stapleton knowingly made a false statement under oath at a § 341 meeting of creditors regarding any retention of an ownership interest in a Lamborghini automobile.

43. The Plaintiff has failed to demonstrate by a preponderance of the evidence, including any circumstantial evidence, that Stapleton knowingly made a false statement under oath at a § 341 meeting of creditors with a fraudulent intent regarding a retention of an ownership interest in a Lamborghini automobile.

## *CONCLUSIONS OF LAW*

1. The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. § 1334 and § 157.

2. This Court has authority to enter a final judgment in this adversary proceeding, as it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3. The Bankruptcy Code requires that a debtor be granted a discharge unless one of the statutory grounds for denial of that discharge is proven. 11 U.S.C. § 727(a).

4. The denial of a debtor's discharge is considered a harsh and extreme remedy. *McDermott v. Crabtree*, 554 B.R. 174, 191 (Bankr. D. Minn. 2016); *Res-TX One, LLC v. Hawk (In re Hawk)*, 534 B.R. 697, 719 (Bankr. S.D. Tex. 2015).

5. A denial of a debtor's discharge "is a blunt remedy for actions that hinder the entire bankruptcy process," *Husky Int'l Elec., Inc. v. Ritz*, ___ U.S. ___, 136 S.Ct. 1581, 1589, 194 L.Ed.2d 655 (2016), which is more properly "reserved for a truly pernicious debtor." *Phillips 66 Co. v. Ritchie (In re Ritchie)*, 543 B.R. 311, 319 (Bankr. D.N.M. 2015).

6. Courts should deny discharge only for very specific and serious infractions. *Lowry v. Croft (In re Croft)*, 500 B.R. 823, 857 (Bankr. W.D. Tex. 2013) (citing *Ichinose v. Homer Nat'l Bank (In re Ichinose)*, 946 F.2d 1169, 1172 (5th Cir. 1991)).

7. A denial of discharge is to be imposed only upon those debtors who have not been honest and forthcoming about their affairs and therefore have not fulfilled the duties of full disclosure required of a bankruptcy debtor. *Buckeye Retirement Properties v. Tauber (In re Tauber)*, 349 B.R. 540, 545 (Bankr. N.D. Ind. 2006) ["The denial of a debtor's discharge is akin to financial capital punishment. It is reserved for the most egregious misconduct by a debtor."].

8. Thus, speculation and surmise about the existence of such misconduct are insufficient. Probative evidence must be presented.

9. To fulfill the statutory policy of providing a debtor with a "fresh start," the provisions of § 727(a) are construed strictly against parties seeking to deny the granting of a debtor's discharge and liberally in favor of a debtor. *Laughlin v. Nouveau Body & Tan, L.L.C. (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010); *Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349, 356 (Bankr. N.D. Tex. 2010).

10. The Plaintiff bears the burden of proving that the Debtor is not entitled to a discharge under § 727. The standard of proof for its claim is a preponderance of the evidence. *Cadle Co. v. Duncan (In re Duncan),* 562 F.3d 688, 695 (5th Cir. 2009); *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992).

*§ 727(a)(2)(B): Post-Petition Transfer or Concealment of Property.*

11. 11 U.S.C. § 727(a)(2)(B) provides:

    The court shall grant the debtor a discharge unless —

    > the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —
    >
    > > property of the estate, after the date of the filing of the petition. . . .

12. In order to establish grounds for denial of a discharge under § 727(a)(2)(B), a plaintiff must demonstrate by a preponderance of the evidence that there was:

    (1) a transfer, removal, destruction, mutilation, or concealment of property;
    (2) belonging to the estate;
    (3) after the bankruptcy petition was filed; and
    (4) performed with an intent to hinder, delay or defraud a creditor or an officer of the estate.

    *A&M Invs., LLC v. Kirtley (In re Kirtley)* 533 B.R. 154, 163 (Bankr. S.D. Miss. 2015); *Schmidt v. Cantu (In re Cantu)*, 2011 WL 672336, at *11 (Bankr. S.D. Tex. Feb. 17, 2011).

13. The second requirement for denying a discharge under § 727(a)(2)(B) is that the property which is transferred, concealed or removed is required to be property of the bankruptcy estate. *Cadle Co. v. Friedheim ( In re Friedheim)*, 277 Fed. App'x. 485, 489 (5th Cir. 2008); *Gebhardt v. McKeever (In re McKeever)*, 550 B.R. 623, 636 (Bankr. N.D. Ga. 2016).

14. "The debtor must have more than a mere *derivative interest* in the property . . . [it must have] a *direct* propriety interest." *McKeever,* 550 B.R. at 635 (citing *Ne. Neb. Econ. Dev. Dist. v. Wagner (In re Wagner)*, 305 B.R. 472, 475 (8th Cir. BAP 2004)) (emphasis in original).

15. It is widely recognized that a plaintiff must demonstrate . . . an <u>actual</u> intent to hinder, delay, or defraud creditors to prevail on a § 727(a)(2) claim — a constructive intent is insufficient. *FNFS, Ltd. v. Harwood (In re Harwood)*, 404

B.R. 366, 384 (Bankr. E.D. Tex. 2009) (citing *Pavy v. Chastant,* 873 F.2d 89, 91 (5th Cir. 1989) (emphasis added).

16. However, "[c]ourts are reluctant to accept a debtor's self-serving statement of her intent as the best evidence of that intent." *Fiala v. Lindemann (In re Lindemann)*, 375 B.R. 450, 466 (Bankr. N.D. Ill. 2007).

17. Thus, the existence of actual fraud "may be inferred from the actions of the debtor and may be proven by circumstantial evidence." *Herman v. Jackson (In re Herman)*, 396 F. App'x 108, 110 (5th Cir. 2010) (citing *Chastant*, 873 F.2d at 91); *Lowry v. Croft (In re Croft)*, 500 B.R. 823, 852 (Bankr. W.D. Tex. 2013).

18. Some of the factors that show actual intent to defraud:
    (1) the lack or inadequacy of consideration;
    (2) the family, friendship or close associate relationship between the parties;
    (3) the retention of possession, benefit or use of the property in question;
    (4) the financial condition of the party sought to be charged both before and after the transaction in question;
    (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
    (6) the general chronology of the events and transactions under inquiry.

    *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 565 (5th Cir. 2005).

19. Because the Plaintiff has failed to sustain its burden of proof to show by a preponderance of the evidence that the Debtor transferred, removed or concealed any property belonging to his bankruptcy estate after the entry of the order for relief with an actual intent to hinder, delay or defraud creditors, the Court must deny the relief sought by the Plaintiff under § 727(a)(2)(B).

*§ 727(a)(4)(A): False Oaths.*

20. 11 U.S.C. § 727(a)(4)(A) provides:

    The court shall grant the debtor a discharge unless —

    (4) the debtor knowingly and fraudulently, in or in connection with the case—
        (A) made a false oath or account . . . .

21. "The purpose of § 727(a)(4)(A) is to enforce a debtor's duty of disclosure and to ensure that the Debtor provides reliable information to those who have an interest in the administration of the estate. Thus, complete financial disclosure is a condition precedent to the privilege of discharge." *Lindemann,* 375 B.R. at 469 (citations and quotations omitted).

22. "False oaths sufficient to justify the denial of discharge include: (1) a false statement or omission in the debtor's schedules; or (2) a false statement by the debtor at the examination during the course of the proceedings." *Beaubouef,* 966 F.2d at 178.

23. "The bankruptcy schedules prepared by a debtor ensure that adequate information is available to the trustee and creditors without the need for investigation to determine whether the information provided is true." *Osherow v. Charles (In re Wolf)*, 2016 WL 4940198, at *45 (Bankr. W.D. Tex. Sept. 15, 2016) (citing *Pratt*, 411 F.3d at 566).

24. As the objecting party, the Plaintiff carries the burden of proof under § 727(a)(4)(A) and must demonstrate by a preponderance of evidence that:
    (1) the debtor made a statement under oath;
    (2) the statement was false;
    (3) the debtor knew the statement was false;
    (4) the debtor made the statement with fraudulent intent; and
    (5) the statement materially related to the bankruptcy case.

    *Packer,* 816 F.3d at 94; *Duncan,* 541 F.3d at 695.

25. If a plaintiff establishes a *prima facie* case that a debtor made a materially false statement, then the burden shifts to the debtor to present evidence that he or she is innocent of the charged offense. *Id*. at 696.

26. A plaintiff in a § 727(a)(4)(A) action must demonstrate by a preponderance of the evidence an actual intent to hinder, delay, or defraud creditors — a constructive intent is insufficient. *Harwood*, 404 B.R. at 384 (citing *Chastant,* 873 F.2d at 91).

27. In most circumstances only the debtor can testify directly concerning his or her intent and "rare will be the debtor who willingly provides direct evidence of a fraudulent intent." *Neary v. Darby (In re Darby)*, 376 B.R. 534, 541 (Bankr. E.D. Tex. 2007). Instead, the existence of a fraudulent intent is most often betrayed by an examination of a course of conduct. *Id.; see First Tex. Savings Assoc. v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir. 1989).

28. Thus, "[f]raudulent intent may be proved by showing either actual intent to deceive or a reckless indifference for the truth." *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 504 (Bankr. N.D. Tex. 2006); *see Sholdra v. Chilmark Fin., LLP (In re Sholdra)*, 249 F.3d 380, 382-83 (5th Cir. 2001).

29. "A debtor's reckless indifference to the truth is sufficient to deny the debtor a discharge if the subject matter of the omission is material to the administration of the bankruptcy." *Bishop v. Kinard (In re Kinard)*, 518 B.R. 290, 305 (Bankr. E.D. Pa. 2014).

30. A false statement or omission is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 692 (Bankr. E.D. Tex. 2009) (citing *Duncan*, 562 F.3d at 695).[11]

31. Because the Plaintiff has failed to sustain its burden of proof to show by a preponderance of the evidence that any false statement made under oath by the Debtor in this case was made with a fraudulent intent, the relief sought by the Plaintiff under § 727(a)(4)(A) must be denied.

## CONCLUSION

32. Based upon the Court's findings and/or conclusions that the Plaintiff, Benchmark Bank, has failed to prove by a preponderance of the evidence its causes of action under either of the referenced subsections of 11 U.S.C. § 727(a), all relief sought by the Plaintiff's Complaint under § 727(a) must be denied and judgment must be rendered for the Debtor-Defendant, William Gary Stapleton, in this action.

33. Due to the pendency of another § 727(a) complaint against the Debtor-Defendant, William Gary Stapleton, the decision regarding the entry of a discharge order pursuant to 11 U.S.C. § 727(a) shall be deferred to a subsequent time.

---

[11] A finding of materiality is admittedly not dependent solely upon the value of the omitted assets or whether the omission was detrimental to creditors. *Pratt,* 411 F.3d at 566.

34. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 09/30/2016

_____
THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE